Thank you, Your Honors. Isaac Gabriel on behalf of Quarles & Brady and in affiliation with the Justice Project, appearing on behalf of Petitioner Sean Ward. This matter is before the Court on a certified issue for the denial of a habeas corpus petition, with the certified issue being whether or not the prosecutor's comments during closing argument violated Petitioner's right to a fair trial and a substantive due process rights. The comments that are at issue are namely three comments that were made by counsel during his closing argument and more particularly during his rebuttal argument. The first comment was, I believe defense counsel has no interest in looking at the truth in this case. The second comment, which we believe was the more egregious comment, was when he particularly vouched for not only the prestige of his office, but also the lead detective in the case, Detective Sperry. And what he said, I think it's important to state for the record, is anybody here think that I or Bob Sperry or the police department don't have better things to do than just say, gee, I think I'll prosecute Sean Patrick Ward today? You think that you don't have better things to do with your time? These comments are critical in this case because this case was one where the evidence was thin. We are faced with a scenario where defense counsel did not object, and therefore the standard that we're looking at is a plain error document. No, no, we're on AEDPA review, though. I'm sorry? Aren't we on review under AEDPA? So, I mean, we would use plain error on direct review. And so here the question is, we have to go back to the Arizona court decision and determine whether there's unreasonable finding or something contrary to Supreme Court law. That's correct. So the Supreme Court law that's laid out is the plain error doctrine, and that's being set forth by U.S. v. Young. And in the State nation All of your citations with regard to this appear to be in the context of direct Federal criminal appeals, but the AEDPA standard is very different. We're required to grant relief. We're required to conclude the State court decision is not only wrong or plainly wrong, but unreasonable. That's a higher standard, isn't it? That's correct. That's correct. So that's the standard that applies here. That's correct. Plain error is just not Well, it's whether the State court reasonably applied the plain error standard or unreasonably applied. Do you have any authority, case law, to offer to us, or what's your best case for the proposition that the kind of error you describe is unreasonable under the EPTA standard? Well, unfortunately, Your Honor, there is not a good body of law on AEDPA on prosecutorial misconduct. So our view is what you have to do is you have to go back and you have to look at the body of law that establishes what the plain error was or what the plain error test is under Federal law. Well, you know, let's just – if you look at the statement, I don't think you need plain error or anything else to say that this last statement you talked about, like, do you think I don't have anything better to do than sit around and prosecute people, that's vouching. That is improper. Then the real question I think we have to answer that it would be helpful for you to answer is did the State court err in determining that that's not a basis for overturning the conviction? That's correct, Your Honor. And both courts that have evaluated the statements have found they're improper. The Court of Appeals on direct appeal, the district judge below on the habeas decision. Found that the statements were proper? Improper. The statements were improper. What both courts then – So the State court found that it was improper. Correct. So our judgment has to be, then, that even though the State court found that it was improper, that the State court reached the wrong decision when it found that it was – that it was harmless error or that it was – that it didn't rise to the level of a due process violation. That's correct. That it unreasonably implied – And we have to have some kind of a Supreme Court case, something that suggests to us or should have suggested to the Arizona courts that that judgment was wrong. What's the case? The case is United States v. Young. I'm sorry, United States v. Young, which is a 1985 Supreme Court case. It's 470 U.S. 1. What that case holds is that under the plain – under the plain error doctrine, you have to go through a two-part test. You have to first determine whether or not the comments of the prosecutor were improper. The State court of appeals did that. Then you have to weigh that evidence under the plain error doctrine. You have to say, okay, let's look at the comments and let's view those comments in the context of the evidence that was presented at trial, and let's look at how prejudicial those were. And did those deprive the Petitioner or the defendant at the time of his right to a fair trial? So that's the test that the State court should have applied. If you turn back to the court of appeals opinion that was issued in the case, and that's page 19 of the opinion which is attached to our habeas petition, the State court of appeals, they cite two cases, both cases are State court cases, State v. Leon and State v. Hughes. Roberts, State v. Hughes is quoting Donnelly v. DiCristoforo. That's correct. And Donnelly v. DiCristoforo is an earlier case than U.S. v. Young. In State and, candidly, State v. Leon, that case does walk through the two-part test. The prejudice of were the remarks improper, and then did they deprive counsel of a or, excuse me, defendant of a fair trial. And in that case, they actually found that it did. What the court of appeals does in Petitioner's direct appeal is they do a very cursory analysis. They cite those two cases, and then on page 19, they say, while these remarks were arguably in response to the statements made about the police by defense counsel in his closing argument, they were nonetheless improper. Then they say, however, Ward did not object to any of the statements to which he points on appeal, and we cannot say the prosecutor's remarks deprived Ward of a fair trial. What it appears that the court of appeals did in this case is that they did not actually engage in the analysis that's required by U.S. v. Young. U.S. v. Young says you have to weigh those comments in the context of the case against the strength of the government's case that was presented at trial. Supreme Court has told us recently in cases like Harrington that if the State court doesn't give a reasoned explanation, we have to fill in what the reasoned explanation presumably was. So is it enough that the court didn't go through the process, or do we have to go through that process ourselves and assume the State did that, too? I think that the distinction in Harrington is Harrington dealt with an appeal of a California supreme court, just summary denial, where there was no opinion whatsoever. So in Harrington they said, look, the underlying court does not need to go through and list out all the reasons, that would be burdensome, we're not going to require that. In this case, what you have is you actually have an application of law, and what you have is what appears to be an application of incorrect law because the court is focusing on the failure to object. And the court also never goes back and says, so now let's look at the error that we're acknowledging, we're finding these comments were improper, and let's look at the error against the evidence and the strength of the government's case, which the district. The failure to object isn't irrelevant to the question of whether it had an impact. Presumably, if defense counsel is sitting there and decides not to object, it's because he doesn't think it's very important or doesn't want to draw attention to it. Or he was ineffective, which was one of our other issues that we brought up. Now, that's not that hasn't been certified before this court. But I don't think anyone would make a strategic decision to say, I'm going to let that vouching comment go in rebuttal because it doesn't seem like it's important, particularly when both courts that have looked at it have found that the comments were improper. But getting back to the standard here, which is the unreasonable application of the law, the court of appeals never applied the U.S. v. Young test. They never went back and said, let's look at these comments and let's look at the thinness of the government's case. Let's look at the fact that this could have very well been a suicide. Let's look at the fact that there really were no witnesses other than a 4-year-old who was developmentally disabled or had verbal communication problems. Let's look at the fact that the Petitioner had an alibi. Let's look at the fact that Petitioner was seen on camera at a store that evening. The medical examiner in this case for Kingman could not determine that this was a homicide. He found it inconclusive. It could have been an accident or suicide. There's all this conflicting evidence, and the case effectively comes down to the credibility of a 4-year-old who testified. And when you go back and you look at the Plain Air Doctrine as it's been applied by the circuit courts across the board, when you have cases where credibility is the key issue, when you have it's one witness that the government's case is hinging on, and the defendant has counter-evidence to counter that witness, and then you have vouching, what the courts have found is that in those cases, if the defendant is found guilty, it is uniformly that the vouching and the bolstering of witnesses is prejudicial and does deprive the Petitioner or the defendant in the case of a fair trial. And the cases that are distinguishable that the government likes to cite, too, in this case, is those are cases where they find the comments were improper, they don't find them to be prejudicial. And when they find they're not prejudicial, it's typically because there's an overwhelming amount of evidence in the case that supports the conviction. There's either multiple eyewitnesses, you have victims who survived who I.D.'d the perpetrator, you have DNA evidence, you have confessions, you have recordings, you have all these things where they say, sure. Kagan. Ginsburg. Could I stop you there? I just want to make sure I understand your argument about the State court. I thought that the State court, having found that two of these comments were improper and one was potentially invited error, that the State court made a determination that there was not a fundamentally unfair trial. Is that not basically the second part of Young in some other iteration? The State court's finding is based, it's one sentence, and in that same sentence they say counsel did not object. It's unclear as to whether they're concluding that there was no prejudice in trial or that the defendant was not deprived of fair trial. Is it because the counsel did not object? That's a little unfair. And to distinguish it from the case in Harrington where you have a one-line dismissal by the State supreme court, this is quite different because the Arizona court of appeal did recite all of the evidence in its factual recitations. It had been through a number of other claims of error. It's not that the Arizona court of appeal was issuing a one-line dismissal of the appeal. They cited appropriate cases, set out a standard, noted that it was plain error, cited the errors, said that they were mistakes on the part of the prosecutor. That's not exactly a one-line dismissal as we had in Harrington, is it? Harrington is what we call the postcard denial, in effect. Correct. The difference, the difference I would say is they actually don't cite the plain error standard. They cite two cases, one of which talks about the plain error standard. The court of appeals never says this is plain error. You can overcome the fact that defense counsel did not object because if you find a substantive due process violation and if you find the remarks of the plaintiff are irrelevant. So it's an irrelevant concept. I mean, I don't, is Arizona criminal law, does it have plain error in the same way that the Federal courts do? The State v. Leone discusses the plain error, the plain error test. U.S. v. Young in that the Federal issue was. You're telling us, but they cite, you're citing the case that the court of appeals cites, so how can it be said the court's mindless of what the standard is? Well, they never discuss it. I mean, as I said, the case, the case goes through multiple facets. You have, if the counsel objects, it's a different standard. If you, if the counsel doesn't object, it's the substantive due process. How many claims were made in that appeal? I don't know the number, Your Honor, multiple, I think eight or nine at least. Or more. Yes. Yeah. I mean, you know, so they, they don't have to write a treatise if, they clearly had in mind what the issue was, so you're basically faulting them for not saying more about it. Well, I'm faulting them for not saying more and for applying, not, not applying the proper Federal standard and not, not turning. And how does the Young standard differ from what, what they, what the court cited? The Young standard says you have to evaluate. I mean, the Young standard says you have to evaluate. Hughes does not go into that. Leon evaluates it itself. Our view is this Court did not undertake that. And what, and what suggests in the court of appeal opinion that they didn't evaluate it? I think just the one sentence that we got. The one sentence contains, it contains nothing. How does that suggest that they didn't evaluate it? They had all, they had the evidence. They had recited the facts. They, they knew it was, they knew that this was a mistake. They, they did all of that. You mean because they didn't write enough? Does Young say that you have to write something? Young does not say that. What page on, what page on, on, on the Young opinion? Page, page 19, Your Honor. I only have two minutes left, which I would like to reserve some time for rebuttal if possible. So you said page 19 of the Young opinion? That's correct, Your Honor. No, I'm sorry, not of the Young opinion, of the court of appeals opinion. The Young opinion does not speak to, the Young opinion is pre-ADPA. The Young opinion is pre-Maryson. Right. I'm just trying, I'm just trying to figure out where it says that they had, that the court of appeals has to write something. Well, nowhere does it say that. Okay. Then how does Young, then how, then how should have Young guided the, the Arizona court of appeal? If they had cited Young, what, what, how would they have known that they were making a mistake? The only, the only thing that you can, that you can infer from what is written. I mean, this Court has to look back and say what's the record that we're basing this on? And did the court of appeals did the court of appeals properly apply federal law, clearly established federal law, which the clearly established federal law part is U.S. versus Young. Now, if you're going to say, if there's a blanket rule that every time they just come to a decision, then that's the right decision. And we're not even going to review it at all. Then, you know, that's, I don't know what to say. I mean, you giving deference to a lower court does not mean that you can't look to see, did they properly apply the law and giving deference doesn't mean you can't give relief where it's against the clearly established federal law. And like I said, in every case that the federal law has come down on where they've found credibility is an issue in the prosecutor vouchers, like in this case where credibility was an issue, what you end up with is you end up with a finding that it's improper. And so the position of, of Petitioner and what we're arguing is the court of appeals did not properly apply the clearly established federal law in this case. And I would like to reserve your remaining time. Thank you. May it please the Court. My name is Assistant Attorney General Robert Walsh, appearing on behalf of the Attorney General's Office and the Warden in this case. As this court's questioning of counsel indicate, Petitioner here has fundamentally erred in terms of deciding what the controlling law is and what the clearly established federal law is. He misidentifies it as United States v. Young, and he treats this case, if you look at his brief, as if it were a direct appeal from a conviction in federal court. And there's a huge difference there. First of all, United States v. Young doesn't apply. That was a case on direct appeal. And what the correct standard is, is actually set forth by the U.S. Supreme Court in two cases, Darden v. Wainwright, and also Donnelly v. DeChristoforo. And in that particular, in those particular two cases, the Supreme Court says, we have something much different here on federal habeas review when we have a prosecutorial misconduct claim. We do not have supervisory power. For example, that which the Supreme Court could have exercised in Young to reverse the conviction. Rather, we have a much more narrow question. The narrow question is, was there a violation of due process? And that standard is, did the prosecutor's comments so infect the trial with unfairness that the resulting conviction was a violation of due process? Now, under the AEDPA and under Harrington v. Richter, or Richter v. Wainwright, that is contrary to an unreasonable application of Donnelly and Darden. And the thing that's very important is when you take a look at that particular standard, the Supreme Court is very clear. It says in Harrington on page 786, it says a state court's determination that a claim lacks merit precludes habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision. The court also continues on by quoting Yarbrough v. Alvarado. It says, evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway the courts have in reaching outcomes in case-by-case determinations. In this case, there's not a dispute as to the propriety of the remarks, are there? I mean, the state court of appeals concluded without much need for discussion that the remarks were improper. What we're looking at is the impact of the remarks. That is absolutely correct. But in a couple of instances. But is the standard particularly different? I mean, you're suggesting we discount Young, look, for example, to Darden. But in fact, your brief quotes from Young and cites Darden as being in accord. I don't know the terminology. The language is certainly different. It's not plain air. It's the unreasonable determination. But in both cases, we're supposed to look at the evidence and sense the state court of appeals doesn't articulate the reason. We imagine what the reasoning would have been and then evaluate that. Isn't that how we should go about this? Right. And let me be very clear here. On habeas review, the Supreme Court in Engle v. Isaacs makes it very clear that a habeas petitioner has to do more than show plain error. And counsel is saying that the plain error standard in Young is somehow the controlling case. So I just want to make sure that we understand that that's not the standard here. But with respect to the question you asked me, Judge Clifton, I do in fact cite United States v. Young. And the reason why I cite United States v. Young is because I'm trying to show that the statements that Mr. Engen made during his closing argument have to be taken into consideration in determining the real question that Donnelly and Darden asked this court to decide, which is, did the prosecutor's remarks render the defendant's trial fundamentally unfair? Which is what I'd sort of like to get to. We really haven't gotten very far into the particulars of the case. And to be honest, what's troubling about the case is this is not one that anybody could describe as as one of overwhelming evidence of guilt. I mean, it is a close call. The district judge plainly recognized that, you know, this isn't one of those the vast majority of cases we get, you know, these kind of remarks don't matter because the evidence is overwhelming. This doesn't fit that pattern. So why shouldn't we be concerned about the remarks that were made by the prosecutor? Well, as a district court indicated that essentially she paraphrased what Richter says, which is that fair-minded jurors could disagree over whether or not the defendant had an unfair trial as a result of these remarks. And that's all that I need to establish under the AEDPA. I don't have to convince this court that it would have reached the same result on direct appeal. Oh, sure. Certainly right. If if if we adopt what the district court's logic was, then we're going to affirm and you emerge a winner. Looking at the evidence here, why should we why should we decide that's the right conclusion? I mean, in effect, we're doing the same exercise that that she was doing. And and she didn't say she reached that conclusion. She concluded that, well, maybe so, because frankly, as I read hers, I get the sense that it had she a free hand, were she sitting as a California or a Arizona court of appeals judge, she would have decided it differently. What is it that's sufficient here that causes us to conclude a fair-minded jurist could decide this didn't have a harmful effect? Okay. Well, first, let me make clear that in Donnelly, the Supreme Court didn't hang its hat on the fact that there was overwhelming evidence when the prosecutor there did in fact vouch. In fact, there's a footnote where the Supreme Court quotes from the First Circuit and the prosecutor basically says, I don't think there's any reasonable doubt in this case. And there in Donnelly, what did the court rely upon? The ambiguous nature of the statements, the fact that it was fleeting, it was isolated as it was here, and also the fact that the trial court gave an admonition. Nowhere in Donnelly does the word overwhelming evidence appear. Even in Young, Judge Clifton, the Supreme Court goes through its analysis and it starts ticking off the reasons why this was not plain error, reminding you again that plain error is much less a standard that the defendant has to prove in this case. And it goes forth and says, we have to look at the salvo of the defense attorney, which I do here. Let's take a look at what the trial prosecutor really hoped to get to at some point is the facts of this case. This is a conviction that depends upon the testimony of a four-year-old child who was easily led into telling things that plainly weren't true upon cross-examination, which was the defense attorney's attempt to demonstrate to the jury that the witness shouldn't be relied upon. I'm not suggesting that the witness can't be relied upon, but I had, I've got two three-year-olds once, and I'm not sure I'd want to stake a conviction on it. What is it that, that gives us enough comfort that there was not adequate evidence in the Jackson sense, but enough here so that this comment, which basically says to the jury during closing, I'm the prosecutor. I'm here. I'm staking my reputation on this. I'm not going to waste my time if there's not merit to this case. That's classic vouching. Why should we disregard that and think that it had no ill effect on the jury's deliberation? Well, because there are other factors that you have to take into consideration. So what are, what is there here that supports the conviction? Okay. Well, I'm going to address the evidence last. First, it's very brief. We have to remember that it basically took three pages of a 60-page rebuttal closing. This was 1,865 pages of trial testimony given by 38 witnesses. So this is a very small part of the, of what the jury heard. The jury was instructed that the arguments by counsel were not evidence. Jurors are presumed to follow that. And this Court in Ortiz v. Sandoval indicated that, that general instructions like that were sufficient. I cite a plethora of cases in my brief of that proposition. We know the jury followed those instructions. Why? Because they came back with a lesser clear. I've got to tell you, you know, I know all of this, and we get this all the time in vouching cases. And I understand it's a passing reference in a long trial. I still got a problem of a case that seems to be unusually evenly balanced, where, you know, if you've got a 50-50 proposition, sometimes you, you drop a pin on one side and that tilts it. And why, why do we have any confidence that a reasonable jurist can, could conclude that that couldn't happen here? Maybe we can get down to some specifics, because at first people thought, well, this is probably a suicide. The prosecutor says, yeah, we weren't necessarily looking for charging anybody. We thought it probably was a suicide. Well, in a case this close where you didn't, you weren't looking for him, and he might not have done it, who knows, and you have a 4-year-old is the testimony, and then you have a prosecutor that stands up and says, you know, you know, trust me, I wouldn't have gone after this if I really didn't believe it, because I got better things to do. No, and I have to disagree with that characterization of the statement. And the reason why I filed my supplemental citation of authority citing Donnelly v. DeCristoforo is that essentially what you're doing, just like the district court did, is you're focusing on that statement in isolation. Well, of course I'm focusing on it in isolation, but you haven't given me evidence that would suggest that, I mean, that's a pretty power, it's not just a little statement, I mean, we have vouching and we have vouching. Right. This one's a pretty, you know, Godzilla error of vouching by the prosecutor. So it's not just a tiny little error. It's a huge error, and then you have the evidence. So the question is, if you have a jury that's like this, was that statement so significant that it would have tipped it to an unfair trial in light of what was pretty thin evidence, and even, you know, Judge McGee has said that? No, I would say no, because what you have to do is take a look at a couple of things. Engen, the defense attorney, indicated during his closing argument that the prosecutor and the police and even the grand jury believed that he was guilty. So whatever prejudice you have is somewhat dissipated by that. But also when you take a look at the prefatory statement before this remark, what did the prosecutor say? He said, what about Bryce? Let's talk about Bryce. At this time, we didn't have any idea what happened. It could have been a suicide. Then he makes the statement. Then he starts to recount the evidence that indicated that they had neither an opportunity because they didn't know what happened, nor did they have a motive, they didn't know any of these people, to basically tell Bryce, hey, Bryce, go tell that forensic interviewer that daddy did it, or make sure that it's Sean, please. He goes through that evidence, even indicates that, hey, I wasn't there either. I wasn't at the crime scene. I wasn't mentioned during the forensic interviews. When you take a look, Judge McKeown, at what was said before and after that, he's referring to the trial evidence. Now, in Lawn v. United States, the Supreme Court looked at a factor like that and said the jury would understand that he's not relying on evidence outside the record. In fact, he's relying on the trial evidence. So you also have to remember that the defense attorney spent 21 pages of his closing argument. When you take a look at my brief, when I recite the closing arguments, basically saying this prosecutor coached this boy. This prosecutor tried to inflame the jury. He has so little evidence, he's trying to basically trick you. These police officers were evidence shopping. This coroner wanted to be just like Quincy on TV and basically say murder because he enjoyed it just for the sake of it. We also have the forensic interviewers. Oh, they didn't hear what they were supposed to say, so they led the boy. You have all these statements being made against the state and its investigators, and then you have these three little statements made, and somehow that just upsets the apple cart, and this jury's not going to understand that the prosecutor's responding when it's not even one-seventh of what the defense attorney said. And I want to make something very clear here. When we're talking about coaching here, that particular boy was asked by the defense counsel, did you ever meet this man over here referring to the prosecutor, Matt Smith? And he says yes, and he says that he met him several times. And then the words, Matt, teach me, comes up. Now, the district court in the reply brief, there's a lot made about this particular statement as if there's some sort of basis now for the defense attorney to accuse the prosecutor of coaching and he can't reply to it. Well, first and foremost, what did that boy say he was taught? He was shown pictures of the house that were shown to the jury, and he was also shown, because he had drawn, during his second forensic interview, a picture of his mother on a hook and the defendant with the baseball cap. And that's what he talked about. However, the defense attorney said, hey, did you notice that during Dr. Boychuk's interview, he mentioned daddy so many times? Now it's shown. What accounts for that difference? And he basically makes the inference that the prosecutor, the accusation, basically realized after having interviewed three defense witnesses, we're going to say this kid called everyone who was a man that walked through the front door of his house daddy. That somehow he tricked this boy into calling him Sean. Now when you have a statement made like that, that is something he could respond to. And I cited United States v. Rivera, this court's decision in United States v. Lopez Alvarez. And let me tell you, in United States v. McChristian, this court had a situation where the defense attorney established during cross-examination that the witnesses that this prosecutor had called had been threatened with prosecution by that prosecutor for perjury, should he have said something untrue. And during closing argument, the defense attorney referred to that testimony. This court upheld the state, the prosecutor, when he defended that and said, yeah, I don't want to stand for perjury. So the fact that it's in the record doesn't matter. But you know, this court has already dealt with a situation like this. In United States v. Doss, D-O-S-S, 630 Fed Third Reporter, 1181, 1193 and 94 are the pages. Let me read to you verbatim what this quote is, and then I can tell you, if you didn't find this to be plain error or even reversible error on direct appeal, you certainly must affirm the denial of habeas relief here. This is what the prosecutor said, wow, what a government conspiracy. The government has nothing better to do than pressure people to get on the same page and come into court and lie just so that we could convict an innocent person. Now why didn't this court find that to be reversible? Well, because the defense attorney had accused the prosecutor of, quote, cooking his case, of basically pressuring the witnesses to say certain things. Now I cited to you in my brief a plethora of cases where the defense tried to say, oh, the prosecutor met with the witnesses, polished them up like stones, fine stones. They rehearsed their testimony and accused the prosecutor of impropriety. Well, believe me, when the prosecutor comes in and says, Mr. Ingin doesn't have any interest in the truth, that's pretty much the same thing the defense attorney has been saying for 21 pages of his closing argument. Now the question is this. What about overwhelming evidence? Look, I will admit that having a four-and-a-half-year-old boy be the only witness is problematic, but he didn't say it was suicide. He said, daddy put a rope around the neck. Now, you know what he did? He took a string and he put it around a doll when he was living with his uncle after the murder. He also was afraid of the defendant. He said he had shark teeth. He acted like a dinosaur, an alligator. He saw daddy put mommy on the hook. He was afraid of Sean. He didn't ever want to see him again. Now, I know you have a four-and-a-half-year-old boy. So do I. But let me tell you something. If I hit my wife, she'd be afraid, he'd be afraid of me. And I think that that's the type of thing that the jury looked at. But that wasn't all they had. Who knows to hang a woman by a ceiling hook unless he himself installed it and knew that he could spare the weight? Because he hung her from that when he was having autoerotic asphyxiation sex with her, and only he did that to her. He did what he was familiar with. He knew where the ropes were. We also know he had motive. She broke up with him and said, oh, by the way, I've been cheating on you with all these men. He was obsessed with her. He controlled her. When he was in jail, he had his best friend displace the boys and live in their room so that nothing could happen. And he came and he visited her on an announcement Saturday morning, Saturday evening, and he did the same. Dr. Keene found oblong bruises on her shin. That rope only came to four feet, ten inches off the floor. She was five foot six. How did that happen? Because he held her and created tension by her shins. This evidence indicates he had motive, he had opportunity. The forensic evidence was there. The question is not whether or not you're satisfied, but whether fair-minded jurists can disagree. And given everything I cited in my brief and the reasons I gave, the verdict, the closing, the jury instructions, the brevity of the statements, the fact that they were in response, the fact I am not retreating from the fact that I don't yes, there was no DNA or confession, but there was certainly sufficient evidence in United States v. Bankston, and in other cases that I cite in that footnote. Kagan, you might want to wrap it up, because you exceeded your time there. Yes, but there definitely does not need to be overwhelming evidence for you to deny habeas relief. Thank you very much. Your Honors, I only have a little bit of time here, but the fundamental issue is whether or not Petitioner was deprived of a fair trial based on the prosecutor's comments. In a case like this, in a case where it is close, in a case where there is conflicting testimony, differing opinions of medical examiners, and only the testimony of a 4-year-old boy to support the conviction, where all the other evidence is circumstantial and or disputed, in those types of cases, that is where the courts have uniformly held that it is a violation of substantive due process, that it does deprive the defendant of his right to a fair trial, and that these types of vouching comments, where the evidence is not overwhelming, where the court can't turn and say, well, we have all the evidence, what happened in U.S. v. Doss? In those types of cases, that's where it becomes an unreasonable application of the law, and that's where the conviction should not have stood at the court of appeals level. Thank you. The case just argued, Ward v. Ryan, is submitted. Thanks to both counsel for your argument this morning. We're adjourned. We'll be back momentarily to take general questions from the audience. Thank you. Thank you.
judges: McKeown, Clifton, Bybee